UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY M. RYAN,

                        Plaintiff,

   v.                                                   **DECISION AND ORDER**
                                                                      15-CV-74S

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

                        Defendant.

      1.      Plaintiff Mary M. Ryan challenges an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges she has been disabled since January 9, 2010,[1] due to bilateral knee pain, left tennis elbow, brain lesion, bilateral knee arthritis, migraines, neck pain, high blood pressure, plantar fasciitis, chronic obstructive pulmonary disease ("COPD"), and joint pain. Plaintiff contends that her impairments render her unable to work, and thus, she is entitled to disability insurance benefits under the Act.

      2.      Plaintiff filed an application for disability benefits on January 19, 2012, which was denied April 26, 2012. Plaintiff thereafter requested a hearing before an ALJ. On June 20, 2013, ALJ Timothy J. Trost conducted a hearing at which Plaintiff appeared and testified. Plaintiff was represented by counsel. At the time of the hearing, Plaintiff was 51 years old, with some college education, and previous work experience in administrative and retail positions. The ALJ considered the case *de novo*, and on August 13, 2013, issued a written decision denying Plaintiff's application for

---

[1] On Plaintiff's initial application for benefits, she alleged an onset date of January 1, 2011. In a letter dated June 19, 2013, Plaintiff amended her alleged onset date to January 9, 2010.

1

benefits. The Appeals Council denied Plaintiff's request for review on November 25, 2014. Plaintiff filed this current action on January 23, 2015, challenging the Commissioner's final decision.[2]

3. On June 8, 2015, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 8). On September 21, 2015, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 13). Plaintiff filed a reply on October 12, 2015 (Docket No. 14), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether an ALJ's findings are supported by

---

[2] The ALJ's August 13, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without

3

considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff did not engage in substantial gainful activity from January 9, 2010, the alleged onset date, through March 31, 2011, the date last insured (R. at 12);[3] (2) Plaintiff's medically determinable impairments were her left knee

---

[3] Citations to the underlying administrative record are designated as "R."

medial meniscus tear and chondromalacia,[4] left ankle tendinitis, asthma, and COPD (id.), but Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months and, therefore, she did not have a severe impairment or combination of impairments (R. at 12-13). Because the ALJ found that Plaintiff did not have any severe impairment, as defined by the Act, from January 9, 2010 through March 31, 2011, he stopped his evaluation at Step Two and found Plaintiff not disabled. (R. at 17.)

10. Plaintiff contends that the ALJ erred at Step Two by improperly evaluating her left knee disorders, asthma, and obesity. "Step [T]wo of the disability evaluation, the severity determination, is intended to 'increase the efficiency and reliability of the disability evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled.'" Howard v. Comm'r of Soc. Sec., 203 F. Supp. 3d 282, 295 (W.D.N.Y. 2016) (quoting Bowen v. Yuckert, 482 U.S. at 153) (internal punctuation omitted). "As with every other step in the five-step evaluation process, failure to meet the disability criteria of Step Two results in denial of benefits with no opportunity to proceed to any later step." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995). The severe impairment evaluation "allows the Secretary to deny a claim for benefits on the basis of a relatively simple threshold determination of the claimant's ability to perform basic, generically defined work functions," id., but, "the Second Circuit has strongly cautioned that the severity standard

---

[4] "Chondromalacia patella is abnormal softening of the cartilage of the underside the kneecap (patella)." Yaris v. Colvin, No. 14-CV-551-JTC, 2016 WL 824446, at *5 n. 5 (W.D.N.Y. Mar. 3, 2016) (citing http://www.medicinenet.com/patellofemoral_syndrome/article.htm).

5

. . . is to be applied 'solely to screen out *de minimis* claims.'" Pierce v. Astrue, 946 F. Supp. 2d 296, 309 (W.D.N.Y. 2013) (quoting Dixon, 54 F.3d at 1030)).

An impairment or combination of impairments is not "severe" when medical and other evidence establish only a slight abnormality that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921; SSRs 85-28, 96-3p, and 96-4p. To be considered "severe," the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months," unless expected to result in death. 20 C.F.R. §§ 404.1509, 416.909. "The mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." Flanigan v. Colvin, 21 F. Supp. 3d 285, 300 (S.D.N.Y. 2014) (internal quotation and punctuation omitted). As noted above, Plaintiff bears the burden of showing that she suffers from a severe impairment that renders her disabled. Ferraris, 728 F.2d at 584.

11. Plaintiff first argues that the ALJ's evaluation of her left knee disorders was not complete, and thus his finding that they are not severe is not supported by substantial evidence. The record evidence does not demonstrate a knee impairment lasting twelve months. Rather, the record demonstrates that Plaintiff suffered two separate injuries with an eleven-month gap.

On January 8, 2010, one day prior to Plaintiff's alleged onset date, Dr. Patrick J. Hlubik performed surgery on Plaintiff's left knee due to a medial meniscus tear and medial compartment chondromalacia. (R. at 263-64.) Dr. Hlubik noted that Plaintiff was doing well two weeks after the surgery, her knee pain was improving, and she walked with a trace limp. (R. at 261.) Although Plaintiff reported worsening knee pain in early

February 2010, her condition had so improved by March 2010 that she stopped attending her doctor-recommended physical therapy and no longer used a cane. (R. at 257-59.) Although Plaintiff saw her doctors several times during the period between March 2010 and February 2011, the records of those visits do not discuss Plaintiff's knee injury or complaints of knee pain. (R. at 288-96, 406-17, 498-505, 543-45, 590-94, 765-83.)

Plaintiff next complained to Dr. Hlubik regarding knee pain in February 2011—eleven months after Dr. Hlubik recorded that her condition had improved. (R. at 255.) At that time, Plaintiff reported that she had experienced a new onset of left knee pain two weeks prior. (R. at 253, 255.) Based on Plaintiff's MRI results, Dr. Hlubik noted there "appear[ed] to be a re-tear of her medial meniscus remnant." (R. at 253.) When Plaintiff underwent left knee surgery again on May 12, 2011, the operative report stated Plaintiff had undergone successful surgery in January 2010 and "did well until having worsening knee pain after twisting her knee getting out of a car." (R. at 245.) The operative report also stated that an MRI showed a "recurrent tear" of the medial meniscus. (Id.) Throughout records from May 2011 through July 2012, Dr. Hlubik referred to a "re-tear of the medial meniscus." (R. at 811, 834, 837.) Dr. Hlubik also referred to Plaintiff's knee pain as "new onset pain." (R. at 832, 834.)

The evidence of record therefore does not indicate that Plaintiff suffered an impairment that lasted from at least January 9, 2010, until January 9, 2011. Plaintiff's condition improved enough following her surgery in March 2010 that she stopped seeking treatment. (R. at 257.) And although she sought treatment with Dr. Hlubik again in February 2011, there is substantial evidence of record that the impairment she

7

reported was a new condition and not a continuation of her prior impairment. "[S]uffering from a 'relapse' of an earlier disability or from a new disability similar to one suffered while insured does not entitle one to disability insurance benefits." Arnone v. Bowen, 882 F.2d 34, 41 (2d Cir. 1989) (internal citations omitted). Therefore, the ALJ's finding that Plaintiff's left knee injury was not severe is supported by substantial evidence.

12. Second, Plaintiff argues that the ALJ applied an improper standard in evaluating her asthma. The ALJ found Plaintiff's asthma not to be a severe impairment because it was being managed medically and because it did not cause frequent hospitalizations. (R. at 16.) Plaintiff contends that frequent hospitalizations are not required for asthma to be a severe impairment, and that evidence shows her asthma worsened during the relevant period from "moderate persistent" to "severe persistent."

Plaintiff treated with Dr. Jeffrey B. Rockoff for her asthma beginning in August 2008. (R. at 276-77.) Dr. Rockoff's records categorize Plaintiff's asthma as "moderate persistent," or "moderate/severe persistent," but not "severe persistent." (R. at 279, 285, 292, 295, 307.) Plaintiff reported using Symbicort and Proventil, which Dr. Rockoff noted were "helpful" to Plaintiff, and that Plaintiff "seems to feel a little better for about 1 hour after using inhaler or nebulizer." (R. 294.) Plaintiff was not hospitalized in connection with her asthma, nor do the records show any emergency room visits after the alleged onset date. (R. at 288, 291, 294, 297.)

Although Plaintiff alleges her asthma worsened over the relevant period, there is substantial evidence that Plaintiff's impairment was managed through treatment. And, although Plaintiff testified that she had used her inhaler at her last jobs (R. at 48-49),

she did not testify that using her inhaler created limitations at those jobs or contributed to her leaving those jobs, nor did she discuss the need for an inhaler impacting her daily activities (R. at 39-49). Thus, Plaintiff's asthma was not a severe impairment. See Santiago v. Colvin, No. 12 Civ. 7052 (GBD) (FM), 2014 WL 718424, at *13 (S.D.N.Y. Feb. 25, 2014) ("asthma controlled by an inhaler does not amount to a 'severe impairment' within the meaning of the Act"); Lundy v. Massanari, No. 01-CV-0102(JG), 2001 WL 826707, at *5 (E.D.N.Y. July 10, 2001) (finding there was substantial evidence that plaintiff's asthma was not severe where plaintiff had no recent hospitalization or emergency room treatment and responded well to inhalers).

13. Plaintiff next argues that the ALJ erred by failing to consider obesity in the Step Two analysis. She contends that the ALJ should have addressed obesity as an impairment because, given the height and weight recorded in her medical records, Plaintiff was obese, and because the record indicates that Plaintiff was instructed to lose weight.

As Defendant notes, Plaintiff did not include obesity as one of her alleged impairments in her initial claim. (R. at 119, 210.) Further, when the ALJ questioned Plaintiff about the problems that keep her from working, Plaintiff did not mention obesity. (R. at 30-32.) While Dr. Rockoff instructed Plaintiff to lose weight as part of her asthma treatment plan and her GERD treatment plan, there is no discussion or explanation of why this instruction was given to Plaintiff or of any limitations arising from Plaintiff's weight. (R. at 290, 292-93, 295.) An ALJ does not have a duty to evaluate a plaintiff's obesity where the plaintiff does not claim it as a disability, it was not diagnosed as a distinct medical condition, and no medical source found it as a significant factor in the

9

plaintiff's ability to perform basic work activities. Pokluda v. Colvin, No. 1:13-cv-335 (GLS/ESH), 2014 WL1679801, at *8-9 (N.D.N.Y. Apr. 28, 2014). Accordingly, there was no error in the failure to address Plaintiff's obesity, or in any other aspect of the Step Two evaluation.

14. Finally, Plaintiff argues that the ALJ's credibility determination was too vague to be supported by substantial evidence. "[T]he ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged." Brown v. Colvin, 47 F. Supp. 3d 180, 186 (W.D.N.Y. 2014); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings."). However, the ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010).

> The following factors are to be considered when conducting the credibility inquiry:
>
> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

Brown, 47 F. Supp. 3d at 186 (citing 20 C.F.R. § 416.929(c)(3)(i)-(vii)); Meadors v. Astrue, 370 Fed. App'x 179, 184 n. 1 (2d Cir. 2010). An ALJ need not explicitly discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), see Cichocki v. Astrue, 534 Fed. App'x 71, 76 (2d Cir. 2013), but must explain the decision to reject a claimant's

statements "'with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief' and whether his decision is supported by substantial evidence." Calzada v. Astrue, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010) (quoting Fox v. Astrue, 6:05-CV-1599 (NAM)(DRH), 2008 WL 828078 at *12 (N.D.N.Y. Mar. 26, 2008)).

Here, the ALJ stated that Plaintiff's daily activities are not limited to the extent one would expect considering her alleged impairments, and that her failure to follow up on treatment recommendations indicates that her symptoms may not be as serious as alleged. (R. at 16.) In support of his finding, the ALJ referred to Plaintiff's disability report which states that she grocery shops and prepares meals, can go out alone, is able to pay bills, and occasionally reads books. (R. at 16 citing R. at 134-35, 138.) The ALJ also cited Plaintiff's work after the alleged onset date, which, while not substantial gainful activity, indicated that her daily activities were not as limited as reported. (R. at 17.) Further, the ALJ's decision is replete with examples of Plaintiff's failure to follow up with recommendations from her treating doctors and her non-compliance with medications. In discussing Plaintiff's left knee impairments, the ALJ noted that Plaintiff stopped going to physical therapy, never used a cane, and occasionally took anti-inflammatory medication (R. at 14), with respect to Plaintiff's alleged migraine headaches, he notes that Plaintiff did not follow up with the brain MRI recommended by her neurologist (R. at 14), and when evaluating Plaintiff's asthma, the ALJ notes that Plaintiff did not use her prescribed Albuterol and stopped taking Advair because she did not want to become dependent (R. at 15). Accordingly, this Court finds that the ALJ described his reasoning with "sufficient specificity" to allow this Court to decide that

there were legitimate reasons for his disbelief, and that the decision is supported by substantial evidence. See Calzada, 753 F. Supp. 2d at 280.

15. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error. The severity determination was supported by substantial evidence, and the credibility determination was sufficiently specific to allow for review. Defendant's Motion for Judgment on the Pleadings is therefore granted, and Plaintiff's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: May 23, 2017
      Buffalo, New York

                              /s/William M. Skretny
                              WILLIAM M. SKRETNY
                              United States District Judge